UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

**DEAN ALEXANDER BORDELON**  CASE NO. **10-10275**

DEBTOR  CHAPTER 7

**MEMORANDUM OPINION**

Debtor Dean Bordelon seeks to exempt from his bankruptcy estate $355,130 in life insurance proceeds deposited into a trust from which he benefits. Creditor Royal Alliance Associates, Inc. ("Royal") objects to the exemption claim.[1] Bordelon is not entitled to the exemption.

FACTS

The debtor filed chapter 7 on March 3, 2010. He claimed as exempt $355,130 in life insurance proceeds paid, on account of the June 2004 death of his mother, Mary Lou Reifel, into the "Dean Alexander Bordelon Trust" ("DAT").[2] The debtor is the sole DAT beneficiary. Bordelon's exemption claim is based on La. R.S. 22:647,[3] which exempts the proceeds of a life insurance policy from liability "for any debt of the beneficiary … *existing at the time the proceeds … are made available for [the beneficiary's] own use.*" (Emphasis added.) The debtor's declaration recites that the DAT received the final payment from Reifel's life insurance

---

[1] Trustee Martin A. Schott adopted Royal's challenge to the debtor's exemption on behalf of the estate (P-51).

[2] An April 26, 1994 trust instrument set up a common trust ("Trust") and three separate trusts for each of Reifel's children. The three siblings were also trustees and had sole discretionary use of the income and principal of the Trust. See Exhibit J to Declaration of Timothy Mehok (attorney for Royal) in Support of Objection of Royal Alliance to Debtor's Claim of Exempt Property (P-22).

[3] La. R.S. §22:647 was renumbered to La. R.S. §22:912 by Acts 2008, No. 415. §1, effective January 1, 2009. Hereafter in this opinion, the statute will be referred to as La. R.S. §22:912.

policy on February 15, 2006,[4] more than four years before the debtor's chapter 7 filing. The debtor's schedules and the court's claims register establish that almost all of Bordelon's debts arose after February, 15, 2006,[5] and thus after the DAT received the life insurance proceeds.

Royal's claim against Bordelon stemmed from a failed business named Pooled Pension Management Corporation ("Pooled Pension"). Beginning in 1990 Bordelon joined his mother in running Pooled Pension, an investment company she had formed in 1982. In 1989 and 1998, respectively, Reifel and Bordelon obtained their NASD (National Association of Securities Dealers) licenses through Royal. Pooled Pension ceased operations and filed chapter 11 after Reifel's 2004 death;[6] a chapter 11 trustee eventually succeeded in negotiating a plan to liquidate the debtor's assets.

Several Pooled Pension investors obtained an arbitration award against Reifel's estate and Royal in late 2006 for fraudulent activities related to the investment business.[7] Royal paid the arbitrator's award and after Pooled Pension's chapter 11 trustee sued it on grounds similar to those that led to the investors' arbitration award, filed a third-party complaint for indemnity[8] from Bordelon for its losses associated with Pooled Pension. Royal's third party complaint also alleged that Bordelon had been unjustly enriched by participating in the fraudulent schemes of

---

[4] August 31, 2010 Declaration of Dean Alexander Bordelon (P-54).

[5] Only six creditors (including Royal) have filed proofs of claim and both the regular and governmental claims bar dates have passed. With one exception, all the proofs of claim arose before February 2006.

[6] *In re Pooled Pension Fund Management Corporation*, no. 04-12756 in the United States Bankruptcy Court for the Middle District of Louisiana.

[7] The investors secured the award on claims filed with the NASD Dispute Resolution Division. The debtor was a respondent in the arbitration but the investors' claims against him were dismissed by agreement on November 14, 2006.

[8] Reifel and Bordelon had agreed to indemnify Royal for any judgment or settlement it paid a result of a claim against them. August 29, 1990 "Account Executive Agreement," Exhibit B to Declaration of Timothy Mehok (P-22).

Reifel and Pooled Pension, and that his acts were intentional. That lawsuit was stayed pending arbitration. The arbitrator eventually awarded Royal $270,000 from Bordelon for indemnification, unjust enrichment and intentional wrongdoing,[9] although the decision did not specify percentages of the award attributable to each of the three theories of liability.

ANALYSIS

*1. The Bankruptcy Code does not Preempt La. R.S. 22:912*

Louisiana has "opted out" of the federal exemption scheme. 11 U.S.C. §522(b)(2); La. R.S. 13:3881(B)(1).[10] Therefore, Louisiana debtors may claim only those exemptions available under state law. *In re Black*, 225 B.R. 610, 613 (Bankr. M.D. La. 1998). In the face of this statute the debtor argues that 11 U.S.C. §522(c) preempts the specific exemption provisions of La. R.S. 22:912.[11]

Bordelon contends that the Bankruptcy Code preempts the states' power to define and limit the exemptions even though the Congress through the Code specifically authorized states to require their citizens filing bankruptcy to use the states' own exemption schemes instead of the Code's array of exemptions. He relies principally on *In re Weinstein*, 164 F.3d 677 (1st Cir. 1999), *In re Leicht*, 222 B.R. 670 (1st Cir. BAP 1998) and other opinions from the First Circuit.

---

[9] February 5, 2010 arbitrator's award, Exhibit A to Declaration of Timothy Mehok, (P-22).

[10] "In cases instituted under the [Bankruptcy Code], there shall be exempt from the property of the estate of an individual debtor only that property and income which is exempt under the laws of the state of Louisiana …." La. R.S. 13:3880(B).

[11] Section 912(A)(1) of Louisiana Revised Statutes title 22, on which the debtor bases his exemption claim, states that "[t]he lawful beneficiary, assignee, or payee, including the insured's estate, of a life insurance policy or endowment policy, heretofore or hereafter effected shall be entitled to the proceeds and avails of the policy against the creditors and representatives of the insured and of the person effecting the policy or the estate of either, and against the heirs and legatees of either such person, and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee, or assignee or estate, existing at the time the proceeds or avails are made available for his own use. For purposes of this Subsection, the proceeds and avails of the policy include the cash surrender value of the policy."

However, this case is subject to the law of the Fifth Circuit, which has rejected the contention that Congress has preempted the field of bankruptcy exemptions from state lawmaking:

> Congress specifically preserved state exemptions under §522(b), rejecting a proposal for uniform federal exemptions. Congress allowed states to define the existence and limits of exemptions. By expressly preserving a role for the state law in the Bankruptcy Code, it is clear that Congress has not devised a policy on federal exemptions so pervasive as to leave no room for a state to supplement bankruptcy law with respect to exemptions.

*In re Davis*, 170 F.3d 475, 482 (5th Cir. 1999) (footnotes omitted). Thus, the Bankruptcy Code does not preempt the Louisiana Legislature's enactment of La. R.S. 22:912.

### 2. *The Insurance Proceeds are not Exempt under La. R.S. 22:92(A)(1)*

No reported decision of a Louisiana court directly addresses the availability of the exemption under R.S. §22-912(A)(1) in a case involving a debt arising from an indemnity contract. Royal maintains that the debtor's debt to it arose after the arbitrator's February 5, 2010 ruling that Bordelon was liable to Royal on his indemnification contract, or at the earliest, when it paid the December 2006 award to Pooled Pension's investors. Thus Royal contends that Bordelon's debt to it arose after the insurance proceeds were made available to Bordelon for his use[12] and that as a result La. R.S. 22:92(A)(1) does not exempt the proceeds.

In response, the debtor argues that the claims in Royal's third party complaint were based on alleged acts and omissions during the operation of Pooled Pension (which ceased operations before 2006) and therefore well before the proceeds became available. Alternatively, Bordelon contends that Royal's claims against him arose when he agreed to indemnify it in his August 1990 agreement. Thus, the debtor reasons that because Royal's claims arose before the life

---

[12]    Louisiana courts have concluded that the phrase "made available for his own use" in R.S. 22:912 means "at the time the beneficiary was *eligible* to receive payment of the policy proceeds." *Succession of Romero*, 639 So.2d 308, 310 (La. App. 3d Cir. 1994) (emphasis added). Bordelon's declaration concedes that the DAT received final payment on Reifel's life insurance on February 15, 2006. Therefore, he had use of the insurance proceeds before Royal paid the Pooled Pension investors' arbitration award in December 2006.

4

insurance proceeds were made available to the trust (and to him) on February 15, 2006,[13] they are exempt under La. R.S. 22:912.

The debtor's reasoning confuses *claim* as used in 11 U.S.C. §502 with *debt*, the term used in La. R.S. §22:912(A)(1).  When a debtor claims a state exemption upon filing a bankruptcy petition, the bankruptcy court must determine the right to that exemption according to state law. *In re Norris*, 413 F.3d 526, 527 (5th Cir. 2005).  Under Louisiana law a right to indemnification does not arise until the party seeking indemnification is cast in judgment.  *Babin v. Planet Beach Tanning Salons, Inc.*, 8 So.3d 780 (La. App. 4th Cir. 2009); *Arrington v. Aucoin & Courelle, LLC*, 832 So.2d 319 (La. App. 5th Cir. 2002).  Therefore, whether the indemnity obligation itself was a *claim* for purposes of the Bankruptcy Code is irrelevant to analysis of the debtor's exemption claim under La. R.S. 22:912.

Accordingly, December 2006—when Royal paid the arbitrator's award to the Pooled Pension investors against Bordelon, Reifel and Royal—is the earliest date by which the debtor's indemnification obligation to Royal became enforceable and thus became a debt for purposes of the exemption statute.  At the latest, the debt was incurred on February 5, 2010 as a result of the arbitrator's award on Royal's claims against Bordelon.  In either case, the debt did not exist before February 15, 2006, when Bordelon's mother's life insurance proceeds were made available to the debtor.  As a result, the insurance proceeds are not exempt under La R.S. 22:912(A)(1).

### 3. *Royal Alliance Has Standing to Object to Debtor's Exemption*

Any party in interest may object to a debtor's claim of exemption.  11 U.S.C. §522(l) (making items on debtor's list of exempt property filed in a bankruptcy case exempt "unless a party in interest objects").  *See also* Fed. R. Bankr. P. 4003(b)(1) (establishing time limits for a party in interest to object to debtor's claimed exemptions).  Royal plainly has standing under the

---

[13] *See* footnote 2, above.

Bankruptcy Code and Rules to object to Bordelon's exemption claim. Moreover, a creditor objecting to a debtor's discharge or opposing the debtor's exemptions does so for the benefit of all the creditors. *Matter of Krizmanich*, 139 B.R. 456, 459 (Bankr. N.D. Ind. 1992). *See also Corley v. Crozat*, 115 F.2d 119, 121 (5th Cir. 1940) (recoveries in bankruptcy cases inure to the benefit of all creditors rather than only those who would benefit under applicable state law). Therefore, sustaining Royal's objection to the debtor's exemption of the life insurance proceeds will enable the trustee to administer the asset for the benefit of all creditors, and not merely for Royal.

## CONCLUSION

The court sustains Royal Alliance's objection to the debtor's exemption claim for $355,130 in life insurance proceeds, in which the trustee has joined.

Baton Rouge, Louisiana, January 31, 2011.

**s/Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE